Good morning, Your Honors. May it please the Court, my name is Lisa Rasmussen, and I represent David Cooper doing business as Sextasy and Show and Tell. And I'd like to reserve five minutes for rebuttals, if that would be possible, and I'll watch the program. Okay, thank you. So, in this case, Mr. Cooper applied for business licenses in Clark County, and he applied for the same licenses that the other, what we call swinger clubs, already have. They are a restaurant Category 2 license, which is seating of 12 or more, and an admissions license. He also applied for some various other licenses, tobacco, gift, novelty. He was denied, not within the proper 45-day period that Clark County establishes for itself, but about four months later, he received a letter saying that he was being denied because he provided false and misleading information. So then we asked for an appeal hearing and had a hearing several months later on the denial of the license. And at the hearing, what the County Commission actually said was that it wasn't because there was false or misleading application, information on the application. The denial was because we don't allow swingers clubs or sex clubs in Clark County, and so we could not have issued you a license. That was their ruling at the appeal process, which is before the full County Commission. And that appears not to be true. Right. That is to say, they don't allow his swingers clubs. Right. And so we said, well, then why is the Green Door here? Why are all these, why is Hush Club, why is the Entourage, why are all these other places doing it in the same place? And they said, we haven't caught them yet. Of course, this was over four years ago. Yeah, and they're kind of elusive, right? They move around a lot. Right. In fact, the place that Mr. Cooper had initially leased was the place that Green Door used to occupy, and then they got so well-known, they moved to a bigger space. So and also previous to Mr. Cooper renting that space, there was an entity named EFJ, which was doing business as Red Rooster, which was also a swingers club. So the problem in this case, and we filed lawsuit in district court, is that there's clearly an equal protection violation. Mr. Cooper is being treated differently than other people who are running swinger clubs. And I might tell you, too, these licenses have to be renewed every year. So there's no – Clark County would not even have an argument, and they've certainly not made it, appropriately so, that they can't do anything about the clubs that are already in existence, because they certainly could not have renewed them in 2009 after we had this argument in 2008. Well, is there argument that they haven't caught them? Yes. And it's completely disingenuous. I – things have happened since then that are not in the record, and I think at least one of the commissioners has admitted that this is a problem, and – Why couldn't they renew the licenses if they haven't caught them? They – what happens is the business license – I'm not sure I understand the question, but I think I'll try and answer it. The business licenses just have to be renewed every year as an administrative matter. So the Green Door, for example, would go and pull new licenses and renew them. At that point, Clark County could have said, no, we're not going to renew you because it's our understanding you are a swingers' club, and we told Mr. Cooper no, so we have to tell you no. Right. Except their response is they haven't caught them operating as swingers' clubs. And so my question is just that. You're saying it's disingenuous, but I'm just asking you for something. It's disingenuous because all you have to do is go on their website and look at what they advertise or walk in the front door and see what's happening in there. Did you argue that? Is that in the record? Yes. Okay. Can you – Well, it's not in the – it's not – it was in our appeal when we argued that, so we don't have a record of that. We filed the – The appeal to the county? Yes. Okay. And I apologize for not having a good record of that. Well, what we've got is a complaint and a 12b-6 motion, right? Right. Yeah. It's all we have, and it was dismissed out of hand. Right. So, yes. So this is an appeal of the district court's order dismissing all of the claims, including the pendent State court claims. As I think about it, actually, it could be true we haven't caught them yet, but if they mean to suggest by that, it would be difficult to catch them. I don't think it would be difficult. But on our record, I think – we just don't know, right? On our record, that's correct, because it was a 12b-6 dismissal. Okay. That's correct. We have an allegation that those clubs are continuing to operate. Right. In fact, they are. Yeah. Counsel, is there an allegation in the complaint saying that it would be easy for the commissioners to know that these are swingers' clubs, that they – what you just said in response to Judge Flanagan. Yes. They are operating – Just go to the premises or the website, but does the complaint say that? The complaint, I believe, alleges, and I don't have it in front of me, that they operate openly and notoriously as swingers' clubs. And I think the district court accepted that fact. I don't know that there was any dispute as to that fact, that these other entities operate as swingers' clubs, and that it's very easily discerned by simply paying the admission and walking in the door. Thank you. So the – we addressed in the briefs the equal protection violations and how you get to a due process – substantive denial of due process issue. And the district court, in addition to just dismissing all of these notions out of hand, they also misapprehended the basis for the denial, because the district court continues to believe that the denial was based on false and misleading information. And that was certainly what the county said in its initial letter, but it is not what the county ultimately decided. It's fact that I don't think it's what the county argues now. What they say now is we can't give you a license for a swingers' club because they're illegal in Clark County. They're prohibited. What's the status of any Nevada statute or Clark County ordinance outlawing sex clubs or swingers' clubs? Because I understand there was a lawsuit, separate lawsuit. I understand that a trial judge struck down the statute. Where are we now? Okay. So where we are with that now is, yes, Judge Delaney in August of 2010 ruled the statute at issue, which is 3080.030, unconstitutional. She said that because there's no adequate notice of what is prohibited and vagueness permeates the entire code and opens the door to discriminatory enforcement, she had to find it unconstitutional. That was then appealed by the county to the Nevada Supreme Court. My understanding, and Mr. Warhola may know differently, is at that point the county worked out an agreement with Red Rooster and allowed them to continue to operate as a swingers' club. And the appeal was dismissed? And the appeal was dismissed. That's my understanding. I did not – I meant to look that up before I came and I didn't. Okay. I'm not sure how relevant that is to the disposition of this particular case. And then Clark County did amend the relevant statute, the statute at issue, after that, but I don't think that they made it any better. They took out a lot of the parlor language and some of the things that were vague, but – But this case is not a challenge to that statute. Right. Exactly. I just thought you would – Counsel, if I can ask you a question. Does the record have any evidence that would permit us by deduction or inference to have an idea why the county would turn down your client but turn a blind eye towards all these other swingers' clubs? Well, the inference is that it's more of the same in Clark County and it's the kind of corruption that unfortunately goes on all the time. That's the inference. But is there evidence of that kind of corruption?    be some evidence that perhaps the record motioned, like someone saying Mr. Husch Swinger's Club paid a bribe to a commissioner. I do not have that evidence. I don't have that evidence, and I don't, unfortunately, have police power. What I do have and what is in the complaint is that Mr. Cooper originally learned that the licenses were going to be denied for the purposes of a bribe, and he had to     I don't have that evidence. congratulations. is a candidate by Clark County from the landlord, who is certainly not an employee of Clark County. So there was an indication early on that there was something going wrong if the landlord learns before Mr. Cooper, who's the applicant, that there's going to be a denial. So there was conversation, obviously, that did not involve Mr. Cooper, the applicant. But that's really the only information I have without – I think it's an FBI job, frankly. Okay. Thank you. Okay. Counsel, if I could, I'm just looking at your amended complaint, and it seems to me that paragraphs 30, 34, 55, and 57 are the four that allege that there are other clubs like this that are operating and continuing to operate. I think that sounds right. Okay. So I don't see any indication about the Open and Notorious or the website reference that you made earlier, but I do think that you've alleged that they do, in fact, operate, you know, present tense. It's not a past tense sentence, that they continue to operate. That's correct. All right. And I know in the – Paragraph 55, you allege defendants have knowingly permitted other terminally situated businesses to operate Swearer's Clubs. So whether – I don't think you need the website on top of that. It's a very clear allegation that they know, and they're denying this license despite their knowledge. Correct. And I think in the opposition to the motion to dismiss, we may have attached some of the materials as well. Thank you. Okay. May I reserve the rest of my time? Yes. Thank you so much. Good afternoon. Good morning. Rob Warhoa, Clark County District Attorney's Office. I'm here representing Clark County. Counsel, Judge Gould, I don't want to get you off your planned argument, but at some point in your argument, I would like you to explain why it is that the – your theory of the case as to why the county officials would say no to Cooper, but apparently have not said no to other Swinger's Clubs that operate openly. Right. Well, first of all, when the other Swinger's – alleged Swinger's Clubs came in for their original license, there's no evidence that the county commission was actually informed that they intended to operate a Swinger's Club instead of some other use. There's no – the complaint does not allege that. So I assume that's – I assume that's correct. But still, you know, the clubs are out there and they renew the licenses each year, correct? Correct. It's an administrative approval. What we're talking about is an existing business. And in order to – it's essentially revoking the license. I know it's a renewal process, but it is an existing business. And in order to not renew this license administratively, there would have to be some kind of evidence before the business license department to not renew the license. Now, why they don't have the evidence or – I don't know. But it's different than the situation we have here with Mr. Cooper, where he actually went before the county and openly admitted that he intended to operate a Swinger's Club and wanted to do so under the ruse of a restaurant license or a banquet facility license or other license. That's it. Well, you say under the ruse. How about under the auspices of? Under the auspices of. That's a good term to use. That's neutral. Well, you say ruse. You're saying he's trying to trick them. I don't think he's trying to trick them. He's applying for a restaurant license for an enterprise named Sextasy. I don't – he's not hiding. No, I agree. That's a better word. Auspices is a much better term. It does seem pretty blatant. It doesn't sound sneaky. And so – I mean, just to be clear. And so I did notice several places in the briefing an allegation that he was, you know, quite different than the license he was – licenses he was applying for. But Clark County doesn't have a license, I don't think, to operate a sex club, right? Is there a different license he should have applied for? No, you're correct. Clark County does not have a license category for a sex club. Okay. So then my other question is, is the assertion that the opposing counsel makes in her complaint correct, or maybe she makes it in her brief, forgive me, but that the other currently operating sex clubs are operating under the same licenses that he applied for? I don't know that personally. I mean, that's what's alleged. And it's possible that they have a – But we would have to accept that as true today. Correct. Well, it's in the complaint. I think that's alleged in the complaint. So we're accepting the facts alleged in the complaint as true. Right. So is your – what's the county's position, that if these are out there, we don't know about it? That at the time of the original license application, they were not informed that the intent was to operate a swingers' club. And possibly, they originally operated as a restaurant or a banquet facility, and then morphed into this other use at a subsequent time. But – Now, that's a – you say that's possibly, but we don't know that. We don't know that. Correct. It's not alleged one way or the other. It's not alleged. What's not alleged in the complaint is that at the time the original license was approved, before the business got its original license and began to operate, there's no allegation that the county commission was informed – or the county was informed at that time that there was an intent to operate a swingers' club and not to operate under the licenses requested. And that's different from the current situation we have here. You are correct. According to the complaint and in their briefs, he was very open and stated that it was his intent to operate this swingers' club. Right. And he also states, or alleges in the complaint, that it's well known to the defendants that these other operations are swingers' clubs operating under some permits. And obviously, they're not operating under a swingers' club permit because such a permit doesn't exist. Correct. That's what's alleged in the complaint. And the distinction, though, is, you know, a new license application versus an ongoing  You know, we don't know how long these are. Distinction? Why does that distinction make a legal difference on the various claims that are asserted? Why does it matter? I mean, if maybe it's more dicey or they're going to get opposition if the county won't renew a permit to someone who already has one. But, you know, why would that mean that they could treat similarly situated people differently who both want to run the same kind of club? I'm just not getting it as to why they should be allowed to do that. And it may be I'm missing something. So. Okay. In Nevada, you have an entitlement when you obtain all your discretionary approvals and you considerably rely on those discretionary approvals. The existing businesses have an entitlement to that business operation. Sure, they need these administrative renewals, but they do have a property interest and an entitlement that's ongoing. And in order to take that away from them, it's a different set of circumstances than someone who is seeking a license under a discretionary approval process for the first time. Let me ask you this on this question of property interest and discretion and so on. The district judge concludes that Mr. Cooper had no property interest in the prospect of a license because it was entirely discretionary. Or maybe he didn't use the word entirely. Because it was discretionary in the permit-granting authority. Is that true that it's discretionary in the permit-granting authority if someone comes in and has truthfully described what he will do and has fulfilled the requirements for the license, that nonetheless, Clark County can deny the license? I think if they fulfilled the requirements for the license, then we would approve the license, but that's not the case here. So it's not discretionary? No, it's discretionary. And if there's any violation of the code, you determine whether or not there's a violation looking at the evidence before the county, or if there's any kind of false or misleading statements of material fact, they can deny it for those reasons. You say violation of the code. What code are you talking about? The Clark County code. It would be the business license code and the zoning code and possibly other portions of the code. Now, the denial at the initial stage was not justified based on your violating some provision of Nevada law, correct? Well, correct. It wasn't State law. There was a, I think, the restaurant license. They said they didn't meet the requirements for the restaurant license as far as the number of. And in what way didn't he meet the requirement for a restaurant? It's my understanding that he didn't have enough seats. No, he needed 12. And my sense from here, and you can correct me, is that he alleged he was going to have seating for 12. I know that's the requirement for the license. That's what they're alleging, yes. Well, that's what they're alleging. And the other thing is, right, I understand. The other thing is that it's my understanding that, and I don't know if that's in there or not, that he didn't have a kitchen. He needed a kitchen. I understood that they – maybe I really have this wrong. If so, please correct me. I thought they denied the license because he made false and misleading statements in the license application and because he failed to comply with 6.12.874. That's the Category 2. Correct. What were the false and misleading statements? It's – what's false is inherently false is when you openly admit that you intend to operate a swingers' club, but you're asking for a restaurant license. Okay, so what's false and misleading – this comes back to – and I'm not trying to split hairs with you, but it comes back to the name of the business is Sextasy, so it doesn't sound sneaky to me. And I'm trying to figure out what's false or misleading about that. Well, it's just false to ask for a restaurant license or a banquet facility license in order to operate a different use. Well, wait a minute. Why – why – oh, sorry, Judge Gould. Well, I was just going to say that I have a concern that I think is similar to what was underlying Judge Kristin's question or Judge Fletcher's about to be. My – my question is this. Don't swingers – I'm not sure I know what a swinger is outside the baseball field, but I can guess. And I would say, don't they eat? They eat, right? So why is it misleading to ask for a restaurant license when you're going to let swingers buy food from you? Well, that's not what – Or a gift shop license when you're going to let them buy whatever they buy from you. Well, that's not what the complaint alleges, though. The complaint alleges he intended to operate a swingers club. Nowhere in the complaint does he say that he intended to operate a restaurant or a banquet facility or any of the other uses or licenses that he asked for. The complaint doesn't say that. It just says that he intended to operate a swingers club under these various –   It doesn't say that he intended to operate a restaurant or a banquet facility or any of the other uses or licenses that he asked for. You know, I think it's pretty clear if someone is applying for a restaurant license that he is intending to operate a restaurant. I don't think you require anything other than fulfilling the requirements for the license as a statement of, okay, here's what I'm going to do, beyond that as in a statement of, and I also want to run a restaurant. But the complaint doesn't say that. I mean, I'd like to point out – No, but what the complaint says is that in the license application, he says that he will fulfill all the requirements for the license. And this is a variation on Judge Gould's question, much less elegant. It's entirely possible, it seems to me, that you can run a restaurant in a swingers club. Well, I would think it's possible. And that's what he apparently wants to do. But I don't think the complaint says that he met all the requirements for these other uses. I'd like to point the Court to paragraphs 39 and 40 of the complaint. And basically he's saying that he applied for these various licenses, and then he says, paragraph 39 at the very end, that if they were denied a business license because they intended to open a swingers club, that the other swingers clubs in the commercial center should not be operating under the same licenses for which he applied. And then paragraph 40, the last sentence, says that, you know, the county commission stated it was clear he was attempting to open up a swingers club. And so that – so there was this hearing, and, you know, evidence was presented. It was looked at by the county commission. It was clear to the county commission that he was not going to operate these other uses, that he was just going to operate a swingers club under the auspices of these other licenses. And the Clark County has no obligation to approve a license for a use – for a different use. For instance, if I want to open up a shoe store and I apply for a restaurant license, the Clark County has no obligation to approve a restaurant license for a shoe store operator. So this is – I think it's pretty clear that the three of us don't have a clue about swingers clubs. So just forgive me. But if I wanted to open up a roller skating rink, which I'm a little more comfortable discussing and being a little more knowledgeable about, having taken my children there. So there's a snack bar there, right? Wouldn't I need a license in Clark County to do a roller skating rink to have a little snack bar? Yes. But I imagine there probably isn't a business license for roller skating rinks, right? I don't know. I don't know. Okay. I mean, that's how this strikes me. And I think that's what I'm trying to get at. It's clear that there isn't a license for, you know, swingers clubs. And it's tough for us. And I'm really trying to be very respectful and follow the rules here. But I don't mean to be flip. But it's a – you know, this litigation sort of got stopped before it got started. And so it's tough to know what would have been in the record, you know, whether or not the Clark County would have been able to come in to show, look, we're trying to enforce this. We're trying to – and we haven't been able to catch these other clubs. To me, that would change the nature of this case in a hurry. Right. But I don't have that. And I'm not sure if it's in the record. But there have been other cases, like the Red Reester case. And I think there's another case where they have actually tried to enforce the code against these swingers clubs. So there are other instances of that. And we don't have that here. That's our – I don't think – I don't know if it's in this record or not. Okay. Well, all we have is the complaint, right? I'm apologizing. All we have is the complaint, correct? Correct. All we have is the complaint. So is it possible here that to get a sensible resolution of this case, we would just have to come to grips with the idea, which probably the county wouldn't endorse, that it's not the kind of case that should be dismissed on a 12b-6, that there should be some record, and then it could go forward to a summary judgment? Well, I disagree. I think this case should be dismissed on 12b-6. Mr. Cooper can file tomorrow if he wants to operate a restaurant or these other uses. He could have filed the day after that license was denied. You know, we have him under the code. But his – but the basic complaint he's coming forward here is that the reason for denying it is disingenuous, that there's something else going on here, that he's saying, listen, I fulfilled all the requirements for the restaurant license. They're not denying me because I didn't do that. They're denying me because, for one reason or another, they don't want my swingers club. Well, the complaint doesn't say that. It doesn't say he fulfilled all the requirements for any of those uses. I think the complaint fairly read certainly implies that. And I respectfully disagree. I think he just says he intended to operate a swingers club, and it doesn't say anything else. It doesn't say that he intended to operate anything else. It doesn't say that he renovated the space for a restaurant or any of the other uses. It says that he didn't do that. Now, the fact that he might also want to run a swingers club where he has a restaurant, that's another question, but I think the complaint fairly read tells us that he stated in his application that he could fulfill or would fulfill the requirements for the license. Well, then, the court would have to assume facts, not in the complaint, number one. So that's one of the issues. And then secondly, then, it doesn't make sense if he's comparing, if it's a restaurant license was denied, then why under the equal protection claim is he comparing himself to other swingers clubs? It's a whole different issue. He should then be comparing himself to other restaurants. The vagueness and overbroad allegations don't make any sense because he's challenging the definition of specified sexual activities. Well, if he really wants to do is operate a restaurant or any of these other uses, then why is he challenging the definition of specified sexual activities? And now, in a reply, he's, they're arguing that the other uses don't make any sense. I'm kind of following on from Judge Gould's question. It seems to me that you may have a lot of good defenses on the merits when the facts come out, although you might not. I mean, I don't know. It may be that when the facts all come out, that everybody on the, whatever it is, the counsel is on the take. I don't know. I guess we'll find out. Well, I, you know, I dispute that counsel is not on the take. Yeah, I have no idea. Yeah, I know, but. So, counsel, just one last question, if I could. Going to this issue of him not alleging fairly that he wanted to operate a restaurant, I think what he alleges, what I take away from the complaint is he alleges that he wants to operate the same business that the Green Door operated in the same space, right, with the same licenses. That happened to include a restaurant license and apparently a swingers' club. Right, exactly. He wants to operate a swingers' club under the auspices of these other licenses. That's what the allegation states, correct? Yes. I think we're saying the same thing. And we're saying we have no obligation to approve a license when we have knowledge that the license is not for a use that the license represents. Now, if the problem is that this complaint does not specifically allege that the license application specifically indicates that it will fulfill all the requirements for the license, isn't the proper response to that, given that this is the first ruling on 12b-6, leave to amend? Mr. Cooper had plenty of opportunity to amend this complaint, seek a motion to amend, and did not. So, yes, they could have done that, but they did not. Wait a minute. My understanding is that there was a 12b-6 motion that was granted on the merits without leave to amend, correct? Well, leave to amend was never requested. Well, if I read the order, it's a final order. Well, there was an order, but there was never a final judgment. So after the order was entered, there was plenty of time. I think, I forgot, is it six months afterwards, you had to appeal. But during that time, there could have been a motion to leave to amend. A second time. This is a First Amendment complaint. So you're talking about a third, just to be clear. Correct. It would have been a Second Amendment complaint, but the order was wrong. I don't think it matters. I'm not trying to split hairs. I don't think it matters, but just to be clear. Right. Thank you very much. Thank you. Counsel, could you try one more time to answer the question for me of why it is, if they have something on the books that they think is a statute ordinance that prevents operating a sex club, why they can't deny this license as a discretionary matter and enforcement as to the other clubs that they may or may not have, you know, caught is really a separate issue? Well, it's not a separate issue when it's so blatant that every visitor who comes to town who knows anything about that particular industry, and I understand it's not people like us, knows that that is the place to go. It's blatant. It's on their website. There are billboards. You know, one of the things that Mr. Cooper has said all along is, fine, if you're not going to give me the license, then don't renew the license of the other clubs. That's the alternate remedy he requests. Because then, actually, we'd be having a dialogue with everyone about how to do this. Okay. So could you just as a hypothetical, if they had denied your client's license to operate Sex2See, and then were able to, let's pretend we're at summary judgment land, and they were able to show that they've done whatever enforcement operation and they haven't been able to catch these other outfits from doing anything other than operating a restaurant, would your client have a claim? He wouldn't have a claim, but that wouldn't happen. I can tell you, you know, I'm really struggling to be true to the record in this case, but my knowledge of what has happened. I mean, I sent witnesses in to basically as investigators to various different clubs and have declarations from all of them. The county has them. The county knows that other places have been open since Mr. Cooper's denial. So when Mr. Warhola tells you that, you know, it's a matter of not being able to not renew these existing businesses, it's disingenuous because new places have opened since this was litigated. You know, the price must be awfully high if it's cheaper to hire you as a lawyer than simply to pay for the license by what other subterranean mechanism is necessary to get a license. Right. I'm not sure that it wouldn't be cheaper to do that. That was a facetious comment. Don't pay any attention to what I just said. But I sort of It's time for the argument to be over. It goes back to the issue of, you know, what does the county want? They're saying that he should just ask for a restaurant and open a restaurant. But, you know, do they want honesty or dishonesty? Mr. Cooper has been honest, and the other places have the same licenses. And in answer to Judge Christian's question, they are snack bars, essentially. They have microwaves and they have little pizza ovens, and I don't think they have any kind of a fire. How about roller skating? Yes, roller skating, yes. It's a snack bar at the rink. It's just like going to a baseball game and swinging the bat. Okay. Thank you very much. Thank you. The case of Cooper v. Clark County is now submitted for decision.
judges: Fletcher, Gould, Christen